THE ROCHESTER (two cases).

(District Court, W. D. New York.   August 7, 1926.)

**I. Towage ⬥⇒II(7)—Tug and tow both held in fault for injury to tow.**

A tug and the leading barge in her tandem tow both held in fault for the striking of the barge against an abutment; the tug for heading toward canal wall, where there was danger of her tow striking the abutment, because of the suction caused by a spillway, and the barge for not using her steering gear, as she might have done, being on a slack hawser.

**2. Towage ⬥⇒19—Cargo owner held entitled to full damages from tug for injury to cargo of barge, through fault of both tug and barge.**

Owner of cargo of barge, damaged by striking of the barge against an abutment through fault of both the towing tug and barge, *held* entitled to recover full damages against the tug.

In Admiralty.  Suits by the Brooklyn & Buffalo Navigation Corporation, owner of the barge S. W. Bullock, and by the Continental Grain Company, owner of the cargo of the Bullock, against the steam tug Rochester.  Decree dividing damages between tug and barge, and for full damages to Grain Company against the tug.

Macklin, Brown & Van Wyck, of New York City, for libelant Brooklyn & Buffalo Nav. Corporation.

Barry, Wainright, Thacher & Symmers, of New York City, and Brown, Ely & Richards, of Buffalo, N. Y., for libelant Continental Grain Co.

Stanley.& Gidley, of Buffalo, N. Y., for respondent.

HAZEL, District Judge.  This is a libel to recover damages arising out of a contact occurring in September, 1924, between the canal barge S. W. Bullock and a stone abutment located about 1,200 feet east from the canal locks at Lockport, N. Y.  The Brooklyn & Buffalo Navigation Corporation owns the barge Bullock, which was laden with grain, while the Continental Grain Company owned the grain aboard the barge, which was damaged by the mishap.  The respective owners filed separate libels, which were consolidated and tried as a single case; it being alleged in each libel that the damages were sustained because of the negligent navigation of the towing tug.

[1] It is shown that the Bullock was the ahead barge of a fleet of six barges towed tandem fashion by the steam tug Rochester, going from Buffalo to New York.  The first four barges were coupled close together, while the last two were on a hawser reaching from the rear of the fourth barge.  Not far distant from the canal locks is located the state terminal.  There are two old dry docks at the westerly end separated by the abutment forming a cross-over bridge; the end of the abutment being on a straight line with the concrete canal wall, and extending from the locks to the terminal.  A spillway or sluiceway is maintained westerly of the dry docks, from which the water runs into a forebay to supply power to a nearby mill.  The tugboat, with her tow, intended to moor for the night at the canal wall near the spillway, and in approaching it, the port corner of the ahead barge veered into the entrance of the dry dock and collided with the center abutment quickly arresting her headway and causing the barge Bushy, which was close at her rear, to give her a blow severe enough to damage her forward and aft, causing leakage aft into her cargo.  The injured barge, in a disabled condition, returned to Buffalo.

I think the Rochester was at fault for failing to navigate properly and with safety to her tow.  She has the burden of proving that the impact was not due to her faulty navigation or want of care in handling the tow.  Her duty was to exercise ordinary care in the navigation of the tow and in approaching the terminal or abutment.  She has not by her explanation overcome the presumption of negligence.  The evidence fairly establishes that the tug pulled the barges over and into the abutment from the center of the canal.  The tow was on a single hawser of about 85 feet, extending from the rear of the tug to the bow of the Bullock, and drifted over to the dry dock when about 30 feet away on the port side.  The tug moved slowly at this time towards the canal wall, with no strain on the hawser.  Proper maneuvering required keeping the tow to the starboard side of the canal until it reached a point safe from the effect of the sluiceway suction.  It was negligent towage not to do so.

On behalf of the tug it is asserted that the contact was due primarily to the suction from the spillway, against which the master of the Bullock should have guarded by steering to parallel the wall.  In my opinion, however, the master of the tow was also to blame in failing to arrest the movement of the tow in such a way as to avoid the impact.  He was acquainted with the locality, and knew, or should have known, from the comparatively short hawser, that the tug intended tying up for the night at the terminal, and

that there was danger at that point from suction, which would require careful steering on his part. The hawser was sufficiently slack and loose to enable him to steer, and, had he been alert in doing so, the accident would have been avoided. Although the duty rested upon the tug to exercise care commensurate with the danger, yet he, too, was obliged to exercise reasonable care in proper steering. Both the tug and the tow were equally at fault. The former is liable for heading to the port wall when there was danger of her tow coming in contact with the abutment, and the latter in failing to steer in such a way, during the course of the drifting towards the dock, as to keep away from the canal wall.

[2] Damages must therefore be divided, except as to the Continental Grain Company, which is entitled to a decree for full damages against the tug. The New York, 175 U. S. 187, 20 S. Ct. 67, 44 L. Ed. 126. The decree should provide for the appointment of a commissioner, to ascertain the damages and make report thereon to this court.